John W. GILL, t/a H. A. Gill & Son,
Appellant,

v.

AMERICAN SECURITY CORPORATION,
American Security & Trust Company, as
trustee under the Will of Margaret E. Dow,
deceased, and Clair L. Stout, as trustee un-
der the Will of Margaret E. Dow, deceased,
Appellees.

No. 3650.

District of Columbia Court of Appeals.

Argued Feb. 15, 1965.

Decided April 29, 1965.

———◆———

Richard S. T. Marsh, with whom Donald B. Robertson, Washington, D. C., was on the brief, for appellant.

Norman C. Paulson, Washington, D. C., for appellees.

Before HOOD, Chief Judge, MYERS, Associate Judge, and CAYTON (Chief Judge, Retired).

MYERS, Associate Judge:

Appellant John W. Gill, a real estate broker, obtained a listing agreement from Appellee American Security Corporation covering certain real property.[1] The agreement named a full sale price of $65,000 and a "FULL COMMISSION." It was also provided:

"Subject to prior sale, change of price without notice, to existing occupancy, if any, and to the ratification by the Court, if necessary.

Owners reserve the right to reject any offer until it is accepted in writing.

Consent is hereby given to duly licensed brokers only to offer these properties for sale. No broker shall have any exclusive right of sale nor shall any signs be placed on the properties."

Soon thereafter appellant submitted an offer of one McGiffert to purchase the property for $65,000. This was the first of three offers to buy at that price, but, because appellees thought a higher price could be obtained, all three offers were rejected. Sealed bids were then solicited and the property was ultimately sold through another broker to a person other than McGiffert and at a price higher than set forth in the listing. The broker brought this action for a commission, basing his claim upon the ground that he had produced an acceptable purchaser who was ready, able and willing to pay the set sale price and had tendered full performance under the listing agreement, thereby earning his commission. At the close of the opening statement, the defense moved for a directed verdict. The motion was argued on the basis of the entire record and was granted. This appeal followed.

It is well settled that a motion for a directed verdict upon the opening statement by a plaintiff can be granted when but one reasonable view can be taken of the evidence proffered and of the inferences and conclusions available therefrom and when that view is entirely opposed to the right to recover. Since the opening statement may be waived entirely, grave doubt arises whether the formal pleadings can be so diluted by the opening statement as to afford a proper basis for summary judgment. Lampka v. Wilson Line of Washington, Inc., 117 U.S.App.D.C. 55, 56, 325 F.2d 628, 629 (1963); Smith v. Safeway Stores,

---

1. Appellee American Security Corporation, a wholly-owned subsidiary of American Security & Trust Company, had been authorized by the latter and appellee Clair L. Stout, as testamentary trustees under the will of Margaret E. Dow, deceased, to sell certain trust property in the District of Columbia.

Inc., D.C.App., 206 A.2d 264 (1965). Construing the record most favorably to appellant here and giving him the benefit of every reasonable inference, we cannot say that he was not entitled to introduce his proof and to have his case submitted to the jury. It was error to have denied him this right.

■ As a general rule a broker suing for a commission in this jurisdiction need prove only that he has procured a purchaser who is ready, willing and able to buy on the seller's terms and his right to a commission is not defeated by failure of the parties to consummate the sale where such failure is attributable to the fault or misconduct of the seller. Pastor v. Williams, D.C.Mun. App., 135 A.2d 460 (1957); Buckner v. Tweed, 81 U.S.App.D.C. 256, 157 F.2d 211 (1946). It is firmly established, however, that in his agreement with the broker the seller may prescribe any conditions, arbitrary or otherwise, upon which the right to a commission shall be dependent. Dixon v. Bernstein, 86 U.S.App.D.C. 336, 182 F.2d 104 (1950).

■ In the present case there is no dispute that appellant produced a buyer who was ready, willing and able to purchase the property in question upon the sellers' terms and that he was otherwise acceptable. Appellees contend that the provision, "Owners reserve the right to reject any offer until it is accepted in writing," as contained in the listing agreement, limited the broker's right to a commission and reserved to the sellers complete freedom of action to accept or reject any offers presented by any of the brokers with whom the property had been listed. We do not agree. The provision in question merely stated the limits of the broker's authority to bind the sellers to a contract with a prospective purchaser and did nothing more in that respect than to restate the applicable common law.[2] Any

prospective seller who engages a broker to find a purchaser has the right to reject any offer produced by the broker even if the offer meets the authorized terms. In short, no one is bound by an offer until he accepts it. But the right to reject the offer does not defeat the broker's right to his commission if the offer produced meets the conditions in the listing agreement. The quoted provision here was insufficient to·limit the broker's right to his earned commission once he had done all that was contemplated. If appellees had wanted to make the broker's commission dependent upon the ultimate execution of a contract of sale between themselves and the prospective purchaser produced by the broker, they could have easily done so by plain words to that effect in the listing agreement. Absent such express limitation, we are of the opinion that the broker who produces a buyer ready, willing and able to buy on the seller's terms earns his commission.

■ Accordingly, this case must be reversed and remanded for a trial on the merits. However, if it appears that the only defense that can be properly presented by appellees is that the quoted provision in the listing agreement limited their liability for the broker's commission, the trial court should direct a verdict in favor of appellant at the conclusion of the evidence.

Reversed and remanded for trial consistent with this opinion.

CAYTON, Judge (dissenting).

Believing that the trial judge was right in directing a verdict, I respectfully dissent from the foregoing opinion.

The ruling below was made on the basis of the entire record, all essential facts were stipulated, and it clearly appeared that there was no factual issue to be decided and no legal theory on which plaintiff broker could

---

2. An agreement listing realty with a broker for sale is a mere authorization for the broker to find a buyer and not an offer addressed to prospective pur-

chasers or to the public generally. Thompson v. Walsh, 76 Cal.App.2d 188, 172 P.2d 745 (1946).

be permitted to recover. Hence defendants were entitled to have the case decided as a matter of law.

This case does not fall within the general rule that a broker earns a commission when he procures a purchaser ready, able and willing to buy on the seller's terms and the failure to consummate the sale is due to fault or misconduct of the seller. The record suggests no fault or misconduct on the part of these sellers.

I think this case is governed by Dixon v. Bernstein, 86 U.S.App.D.C. 336, 182 F.2d 104 (1950). There the contract provided that the obligation to the broker would arise only on consummation of sale. Affirming a summary judgment against the broker the court held that since no sale took place there was no liability for commission,[1] and added that good faith of the seller was not an issue in the case. Such was the legal situation in the case before us.

The listing prescribed: "Owners reserve the right to reject any offer until it is accepted in writing." This was not a meaningless provision. It reserved unto the owners complete freedom of action to accept or reject any offers presented by any of the brokers with whom the property had been listed, and it meant that no liability for commission would arise unless and until an offer had actually been accepted in writing. It prescribed the terms on which the owners were willing to deal, and put appellant and the other brokers on notice that in accepting the listing and attempting to find a purchaser they would be subject to that plainly expressed condition and would have no right to claim commission unless the condition were met.[2] This was the heart of the case, and it involved no factual question at all.

One of the broker's arguments was that the listing was ambiguous, and that he should have been permitted to introduce evidence to explain it. His proffer, however, consisted principally of his own personal version as to his subjective understanding of the provision. Such evidence would not have been admissible, and certainly could not have been permitted to vitiate the express conditions of the agreement. I would affirm.

1. To the same effect is Aetna Life Ins. Co. v. Home, 193 Okl. 478, 145 P.2d 189 (1943).

2. The words "full commission" are of no significance here. They meant only that the broker would not be required to split his commission with the vendor-trustees.